## 30582. PRICE v. THE STATE.

GUNTER, Justice.

This appeal is from convictions for armed robbery and aggravated assault.

The appellant has enumerated four alleged errors to have occurred in the trial court.

1. The first enumerated error is that the trial court erred in overruling the appellant's motion to dismiss the charges, the motion having contended that appellant was not tried within the time required by Code Ann. Ch. 77-5B (Interstate Agreement on Detainers).

Code Ann. § 77-504b provides that when a prisoner incarcerated in another state makes a request to proper Georgia authorities for final disposition of an untried Georgia indictment against him, "he shall be brought to trial within 180 days." However, this statutory provision does not say that the untried indictment shall be dismissed if he is not brought to trial within 180 days after he has served his request for final disposition upon the proper Georgia authorities. Code Ann. § 77-505b (c) provides: "In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Code Ann. § 77-505b (e) then provides for the dismissal of an indictment with prejudice.

This case is controlled by Code Ann. § 77-505b and Code Ann. § 77-506b (c); and the record shows that the appellant was tried within 120 days of his arrival within this state as a prisoner in temporary custody of Georgia authorities. The trial judge did not err in overruling the motion to dismiss.

2. The second enumerated error complains of the refusal of the trial judge to grant a certificate for interlocutory appeal so that the denial of the motion to dismiss could be reviewed prior to trial.

The denial of a certificate for interlocutory appeal is not reviewable, because the trial judge's interlocutory ruling can be reviewed upon the appeal of a final

judgment. We have done so in this case in the foregoing division.

3. The other three enumerated errors complain of the admission into evidence over objection of appellant's written confession, the denial of appellant's motion for a mistrial during the course of the trial, and the overruling of the appellant's motion for a new trial after conviction.

We have reviewed the record and transcript, and these three enumerated errors are wholly without merit.

*Judgment affirmed. All the Justices concur, except Jordan and Hill, JJ., who concur specially and Ingram and Hall, JJ., who concur in the judgment only.*

ARGUED JANUARY 15, 1976 — DECIDED JULY 9, 1976 — REHEARING DENIED JULY 27, 1976.

*Stephen E. Boswell,* for appellant.

*William H. Ison, District Attorney, J. W. Bradley, Assistant District Attorney, Arthur K. Bolton, Attorney General, G. Thomas Davis, Senior Assistant Attorney General,* for appellee.

HILL, Justice, concurring specially.

On June 4, 1974, a man identified as Eddie J. Price and a female companion robbed a coin shop in Forest Park, Clayton County, Georgia, and fled in a blue Buick bearing a Florida license plate. Florida authorities were notified. On June 6, Eddie Price was arrested by police in Jacksonville, Florida, on the charge of having escaped from the Florida Division of Corrections. Price was indicted by the Clayton County grand jury on June 27, 1974, for armed robbery and aggravated assault in connection with the coin shop robbery.

Pursuant to Article IV of the Interstate Agreement on Detainers (Ga. L. 1972, pp. 938, 941; Code Ann. § 77-505b), on August 7, 1974, the district attorney of Clayton County made Request for Temporary Custody (form 5) of Eddie Price directed to the Florida Division of Corrections. Price was notified of the district attorney's

action on August 25.

Whereupon, on August 29, 1974, Price apparently signed a Request for Disposition of Detainer pursuant to Article III of the Interstate Agreement (Code Ann. § 77-504b), which request was processed by Florida authorities. A letter from the Florida compacts administrator was stamped "Received, October 7, 1974, Clayton County District Attorney's Office." The date of delivery of a prisoner's request for disposition is the critical date under Article III (a) (Code Ann. § 77-504b (a)).

Although the compacts administrator's letter of transmittal stated that it was in response to the district attorney's request for temporary custody (Article IV), that letter transmitted Union Correctional Institution's offer to deliver temporary custody (form 4) made pursuant to the inmate's request (Article III). Apparently the copy of the inmate's request for disposition of detainer (form 2) was not included.

The compacts administrator's letter of transmittal directed the district attorney to send to the Union Correctional Institution at Raiford, Florida, evidence of agent's authority to act for the receiving state (form 6) and prosecutor's acceptance of temporary custody offered in connection with prisoner's request for disposition of detainer (form 7), which forms were enclosed.

The district attorney executed form 7 ("prosecutor's acceptance of temporary custody offered *in connection with a prisoner's request for disposition of a detainer"*) on December 10, 1974, as well as form 6 ("evidence of agent's authority to act for receiving state") appointing Lt. James Collins as agent to take custody of the prisoner. Thus it appears that the district attorney of Clayton County was acting on the prisoner's request for disposition of detainer (Article III) rather than on his own request for temporary custody (Article IV).

On December 17, 1974, Lt. Collins sought to pick up the prisoner at Union Correctional Institution, Raiford, Florida, pursuant to that institution's offer to deliver temporary custody (form 4), the prosecutor's acceptance of temporary custody (form 7), and his evidence of agent's authority to act (form 6). However, the prisoner was not

delivered because he was not at that institution. Lt. Collins was advised that Price was on trial in Clay County, Florida.

According to Price's testimony given in connection with his motion to dismiss the indictment, he had been removed from Union Correctional Institution at Raiford in September, 1974, and placed into custody of the authorities of Clay County, Florida, for trial on other charges there. He was returned to the Reception-Medical Center of the Florida Division of Corrections at Lake Butler on December 11, and remained there until after December 17, when he was transferred to Sumpter Correctional Institute at Bushnell, Florida.

On April 7, 1975, the district attorney of Clayton County executed another form 7 directed to Sumpter Correctional Institution at Bushnell and an officer took custody of the prisoner from that institution on April 10, 1975.

The prisoner moved to dismiss the indictment on the ground that he had not been tried within the 180 days allowed by Article III of the Interstate Agreement (Code Ann. § 77-504b (a)). He contends that the 180 days ran from October 7, 1974, to April 5, 1975, and had expired before his trial commenced on April 28, 1975.

The state argues alternatively that the prisoner did not make a valid Article III request; that even if the prisoner's Article III request were valid, the state's Article IV request, made first, takes priority over the prisoner's later Article III request; or that if the prisoner's Article III request were valid and operative notwithstanding the prosecutor's prior Article IV request, the 180 day time limit was tolled during the period of at least 72 days when the prisoner was being held for trial by Clay County, Florida (October 1 to December 11).

This is the first case involving interpretation of the interstate agreement on detainers to be considered by this court. *Gilstrap v. Wilder,* 233 Ga. 968 (213 SE2d 895) (1975), involved a question as to application of the agreement, not its interpretation. Because this court's term is ending, time does not permit exhaustive consideration. Suffice it to say that this is an interstate agreement which has been adopted by more than 45

jurisdictions and it is therefore particularly appropriate in this case for us to look to those jurisdictions which are parties to the agreement for guidance in interpreting it.

We would reject the state's argument that because the state did not receive a copy of form 2, the prisoner did not make a valid Article III request. See Nelms v. State, 532 SW2d 923 (Tenn. 1976); Rockmore v. State of Arizona, 21 Ariz. App. 388 (519 P2d 877) (1974); Pittman v. State, 301 A2d 509 (Del. 1973). Upon receipt of the compacts administrator's letter on October 7, 1974, the state was put on notice of the prisoner's request and did not seek to obtain a copy of form 2.

We would reject the state's argument that a prosecutor's Article IV request takes priority over and prevents effectuation of a prisoner's Article III request. Besides the fact that the Act creates no such system of priorities, and no case so construing the Act has been cited or found, we note that upon receipt of the compacts administrator's letter, the state proceeded to act on the prisoner's Article III request rather than on its own Article IV request. The converse of this argument (tacking the prosecutor's 120 days on to the prisoner's 180 days) was rejected in Pittman v. State of Delaware, supra.

The state's tolling argument has merit. Article VI of the Agreement (Code Ann. § 77-507b (a)), provides: "In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement (§§ 77-504b and 77-505b) the running of time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." The courts of this state have jurisdiction of this matter. Gilstrap v. Wilder, supra.

In United States v. Mason, 372 FSupp. 651 (N. D. Ohio, 1973), the court was faced with a similar situation. There the assistant U. S. attorney in Toledo, Ohio (the United States is a party to the Interstate Agreement on Detainers, 84 Stat. 1397, 18 USC App. § 1) received the prisoner's Article III request on September 7, 1972. On that date the prisoner was being held by Ohio authorities. Nine days later he was transferred to Michigan to stand

trial there. He was returned to Ohio on February 6, 1973. When paroled in Ohio, he was returned to Michigan to serve the sentence imposed there. The court rejected the government's argument that the Ohio parole and transfer to Michigan voided the Article III request received September 7. The court accepted the government's argument that the 180 day time limit was tolled during the period the prisoner was standing trial in Michigan, saying (372 FSupp. 653): "Initially the Court agrees with the Government that the time period must be tolled while the defendant was standing trial in Michigan. People v. Stroble, 31 Mich. App. 94, 187 NW2d 474 (1971). This appears to be the only logical result, since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously. Therefore, the court finds that the time was tolled for 148 days from September 11, 1972 to February 6, 1973, in that the defendant was unable to stand trial in this court." The court's reasoning is the logical result. Otherwise an interstate bandit, having committed crimes in numerous states, upon his arrest, could make Article III requests as to all his crimes and only a few states could try him in the 180 days allowed if the Act were not tolled by the several trials.

We would find that the 180 day time limit of Article III (Code Ann. § 77-504b (a)), enforced by Article V (c) (Code Ann. § 77-506b (c)), is applicable here, but that it was tolled by Article VI (Code Ann. § 77-507b (a)), for the 72 days while the prisoner was unable to stand trial in Georgia because he was being held and tried by Clay County, Florida, authorities. The tolling provision is automatic even though the Georgia authorities did not seek to obtain the prisoner during the period from October to December 11. Moreover, it was the Clay County trial which caused the prisoner not to be at the Union Correctional Institution when the Georgia officer sought to obtain temporary custody of him.

Defendant's trial was within the 180 day time limit prescribed by Article III when tolled by Article VI, as well as within the 120 day time limit prescribed by Article IV, and the trial court did not err in overruling the motion to dismiss the indictment.

I am authorized to state that Justice Jordan concurs in this special concurrence.