**STATE ex rel. Janice Faye HAMMETT, Relator,**

v.

**Ronald R. McKENZIE, Specially appointed Judge of the Circuit Court of Franklin County, Missouri, Respondent.**

**Nos. 41103–41105.**

Missouri Court of Appeals, Eastern District, En Banc.

Feb. 13, 1980.

---

Prudence L. Fink, Sp. Asst. Public Defender, Union, for relator.

Daniel M. Buescher, Pros. Atty., Union, for respondent.

WEIER, Presiding Judge.

Relator, Janice Faye Hammett, seeks to make absolute a preliminary writ of prohibition granted on November 28, 1978, to prohibit Ronald R. McKenzie, special circuit judge assigned to Franklin County, from trying three criminal cases pending against her. Relator alleges that under the Interstate Agreement on Detainers, Section 222.-160, RSMo.1978, (L.1971, S.B. 199) she had to be tried within 180 days after compliance with the statutory procedural requirements or else the criminal charges must be dismissed. We agree that the 180 days have run and the court has lost jurisdiction over the relator. The writ of prohibition is made absolute.

On July 19, 1977, a letter was sent from Charlotte A. Sutliff, warden of the Dwight Correctional Center in Illinois, to Joseph M. Ladd, judge of the Franklin County magistrate court. This letter informed Judge Ladd that under the procedure set forth in the Interstate Agreement on Detainers (the Act) the prisoner wished all outstanding Franklin County complaints on which de-

tainers had been filed to be acted upon. On July 25, 1977, the letter from Warden Sutliff was received by the magistrate court in Franklin County together with those additional forms required by the Act. On July 28, 1977, an identical letter from Warden Sutliff was received by the Franklin County prosecuting attorney.

The defendant was produced in Franklin County on August 22, 1977, and appeared before Joseph M. Ladd, magistrate at a preliminary hearing on August 26, 1977. At this preliminary hearing the defendant was read the complaints filed against her by the assistant prosecuting attorney for the State and notified of "the need for and right to legal counsel." The defendant waived her right to counsel and was bound over to the Franklin County circuit court for arraignment on September 6, 1977. On September 6, 1977, defendant appeared before Lawrence O. Davis, judge of the Franklin County circuit court, Division II, whereupon she requested that she be represented by counsel. The court determined she was indigent, appointed a public defender and the case was passed for two weeks until September 20, 1977. On September 20, 1977, the cases were remanded to the magistrate court of Franklin County for a preliminary hearing. On September 29, 1977, the cases against the defendant were consolidated and on October 7, 1977, a preliminary hearing was held in the magistrate court, whereupon the defendant was bound over to stand trial in the circuit court of Franklin County on all charges. On October 18, 1977, informations were filed in the circuit court by the prosecuting attorney.

Defendant was transferred to St. Louis County, Missouri, on October 20, 1977, in accordance with a request (a writ of habeas corpus and prosequendum) from the authorities there to act upon detainers on her in that county. She was returned to Franklin County in time for an arraignment on November 18, 1977. At the arraignment on November 18, 1977, circuit court Judge John C. Brackman in whose court the cases were pending stated that all trial settings for November and December of 1977 and January and February of 1978 were taken. The cases were passed to January 3, 1978, for trial setting at a later time. On January 18, 1978, Judge Brackman reset the cases for February 1, 1978. Two of the three cases were then reset on January 24, 1979, for trial in circuit court on February 1, 1978. The third case was transferred from Judge Brackman, Division I, to Judge Davis, Division II, and reset for trial on January 26, 1978, before Special Judge Ronald R. McKenzie, a circuit court judge from another circuit called in to try the cases. On January 24, 1978, defendant filed a motion to dismiss the charge in the case set on January 26 on the grounds that the 180 day time period under the Interstate Agreement on Detainers had expired and so the circuit court had lost jurisdiction over the defendant. Similar motions were filed in the other two cases on January 27, 1978. Defendant's motions in all three cases were dismissed by the court and petitions were filed on November 28, 1978, in this court seeking our writs to direct Judge McKenzie to enter an order sustaining relator's motion to dismiss and to prohibit him from taking further action in each case. On November 28, 1978, the writs were preliminarily granted by a division of this court and upon the court's own motion the three cases were consolidated. This division ruled that the preliminary writ of prohibition was improvidently granted and so refused to make the writ absolute. Relator's motion for a rehearing was granted. Upon this rehearing before an enlarged panel, we reconsider these consolidated cases upon the issues herein discussed and resolved.

Missouri has adopted the Uniform Mandatory Disposition of Detainers Act drafted by the National Conference of Commissioners on Uniform Laws.[1] The Act contains

1. Section 222.160 RSMo.1978; Uniform Laws Annotated—Criminal Law and Procedure (Master Edition), Volume 11. For a general overview of interstate legislation seeking the expeditious disposition of detainers *see* Note, "Convicts—The Right to a Speedy Trial and the New Detainers Statutes," 18 Rutgers L.Rev. 828 (1964).

an expression of policy and states the purpose of the agreement is to ensure the speedy disposition of untried criminal indictments, informations or complaints which have been filed against those defendants incarcerated in other jurisdictions. Finding that the outstanding criminal charges against defendants tend to "obstruct programs of prisoner treatment and rehabilitation," [2] the legislature has set up a mechanism whereby prisoners in foreign jurisdictions may set in motion a speedy disposition of such charges and a determination of a party's proper status under the detainer(s). Article III of the Act states that

" . . . he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . ." § 222.160, Art. III, 1, RSMo.1978.[3]

In our determination of whether the circuit court has lost jurisdiction by the terms of the Interstate Detainers Act five fundamental questions must be resolved: (1) has the defendant Hammett complied with the procedural requirements of the Act, such that the "clock" began to run; (2) on what date did the statute begin to run against the Franklin County prosecutions; (3) were there any actions by the defendant which might be construed as tolling the 180 day period; (4) on what day, if any, did the period expire; and (5) has the State shown any good cause which would serve to extend the time limit beyond the 180 day period? We address these questions sequentially.

The record before us shows that the specific requirements of procedure laid out in the Act were met. The warden of the institution which had custody of the defendant did send by certified mail certificates to the appropriate officials in Franklin Coun-

ty, stating where relator was imprisoned, her term of commitment, the time she had already served, the time remaining to be served on the sentence, the amount of good time earned, when she became eligible for parole, the specifics of any decisions which the state parole agency had made concerning her and finally, a request for disposition of outstanding complaints.

■ The Act also requires the notification that a prisoner wishes to have her detainers acted upon must be delivered to both the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction. We interpret this language to mean that the 180 day period does not begin until both the prosecuting officer and the appropriate court have received notice of a request to dispose of outstanding complaints. The record, here, reveals that while the necessary papers were sent by the warden of the prisoner's place of confinement to the magistrate court of Franklin County, the letter was not received until July 25, 1977. In addition, the proper papers were not received by the prosecuting attorney of Franklin County until July 28, 1977. Obviously, a finding of which day marked the compliance with the procedural requirements of the Act will determine when the 180 day period began to run.

■ Numerous courts in other jurisdictions have passed upon this question. A plain reading of the statute indicates to us that all parties designated in the Act must have been put on notice before the 180 day period begins to run. Section 222.160, *supra*, Art. III, 1. This is the interpretation given in a number of other jurisdictions, and the rationale is well stated by a New York appellate court. "[T]he interstate compact is not self-executing and petitioner must comply with all of the statutory provisions promptly . . . ." *Baker v. Schubin*, 72 Misc.2d 413, 339 N.Y.S.2d 360,

---

2. Section 222.160, *supra*, Article I.

3. Section 222.160, Art. III, 1, also provides "that for good cause shown in open court, the

prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

370[11] (N.Y.App.1972).[4] Thus, it follows that in the instant case the 29th of July 1977 was the first day of the period, and barring any tolling of the statute, the jurisdiction of the circuit court to hear the causes expired after January 24, 1978. (Rule 44.01).

The next matter to be determined is whether the running of the statutory period should be considered tolled by any action of the prisoner. Article VI(1) of the Act, *supra,* reads:

"In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of the time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

■ The State first contends that the prisoner's request for counsel should be held as a voluntary waiver of the time period.[5] We disagree. Although there is some conflict as to whether the prisoner waived her right to counsel at the preliminary hearing before a Franklin County magistrate on August 22, 1977, certainly when the prisoner asked for counsel at the September 6, 1977 arraignment, the judge acted properly by granting a continuance until she could consult with the public defender. Not having had counsel at her hearing before the magistrate, she may have been unaware of the gravity of the charges against her or the disadvantage under which she would operate without the services of a trained advocate. In short, she may have needed counsel to help her intelligently appreciate whether she should proceed further without

one. As has been stated in determining whether a prisoner had waived his rights under the Interstate Agreement on Detainers Act: "[F]or there to be an effective waiver of rights under the Act, it must be shown that there was an 'intentional relinquishment or abandonment of a known right or privilege.'" *Enright v. United States,* 434 F.Supp. 1056, 1057[1] (S.D.N.Y. 1977), *quoting in part, Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Courts in several jurisdictions have discussed what actions by a prisoner might constitute a waiver of the time period allowed for prosecution. In *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605, 607 n. 5 (1973), the Supreme Court of Pennsylvania rejected a variety of pre-trial maneuvering by the defendant; e. g., filing a writ of habeas corpus and filing a petition alleging harassment by prison officials and incompetence by his appointed public defender. "Neither matter so engaged the Commonwealth's resources and attention that trial had to be delayed." Earlier in *Commonwealth v. Klimek,* 416 Pa. 434, 206 A.2d 381, 382 (1965), the same court had found that a defendant's request for severance was not to be considered a waiver of the 180 day period for disposition of an indictment. The absence of willful trial delay by the prosecutor was not a valid excuse for noncompliance. And in *People v. Johnson,* 38 N.Y.2d 271, 379 N.Y.S.2d 735, 737, 342 N.E.2d 525, 527[2] (1975), an analogous case as to time limits, the court refused to find a waiver of the period in which a prisoner was to be tried under a speedy trial act when the prisoner moved for an investigation soon after his arraignment. Nor has

---

4. *See also, People v. Daily,* 46 Ill.App.3d 195, 4 Ill.Dec. 756, 764, 360 N.E.2d 1131, 1139[2, 13, 14] (1977); *Ekis v. Darr,* 271 Kan. 817, 539 P.2d 16, 22[2–3] (1975); *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605, 606[1] (1973); *Bursque v. Moore,* 26 Conn.Sup. 469, 227 A.2d 255, 257[2] (1966). There are no cases on this point in Missouri but *see McQueen v. Wyrick,* 543 S.W.2d 778 (Mo. banc 1976) concurring opinion of Seiler, J. at p. 783 and dicta in *State v. Plant,* 532 S.W.2d 900 (Mo.App.1976) at 902.

5. In fact, the state argues that the necessity of the court to grant relator her constitutional right to counsel was "good cause" for an extension of the time within which to try the prisoner. We think that the merits to this argument are better addressed as a possible exception to the 180 day period under Article VI(1) which speaks of prisoner waiver because of certain actions and not under Article III(1), which deals with court granted continuances for good cause. Thus, we shall deal with this contention as though it arose under Article VI as an example of prisoner waiver of the time period.

the State shown that there were any stipulations or agreements between the prosecutor and the public defender which might be construed as a waiver of the 180 day period as in *State v. Carlson,* 258 N.W.2d 253, 259[6] (N.D.1977).

The delay in the arraignment of the prisoner so that the public defender might become acquainted with the case was merely eleven days. We do not believe that the prisoner's request should serve or was intended by the legislature to act as a tolling of the 180 day period. In this ruling we are conscious of the intent of the legislature when it fashioned this statute. The Act is remedial in nature and so should be liberally construed in favor of the prisoner. As stated in the Act: "This agreement shall be liberally construed so as to effectuate its purposes." Article IX. *See also, Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605, 607 (1973); *State v. West,* 79 N.J.Super. 379, 191 A.2d 758, 760[1] (N.J.App.1963).

The State's last argument is that it has detailed a variety of grounds for a showing of good cause, such that there should be an extension of the 180 day period. The thrust of the State's argument is that on two court days when the court's docket was called, November 1 and November 15, 1977, the prisoner was not in Franklin County and therefore could not be arraigned. When she finally returned to Franklin County, the circuit court assigned her the trial date of February 1, 1978. Such a date, disallowing any tolling of the statute by the prisoner, was past the 180 day period but it is argued

the jurisdiction of the court should be extended.[6] The State contends that the crowded docket and the presence of the prisoner in another jurisdiction suffice as "good cause" under the Act. We do not agree.

■ First, the crowded docket in Franklin County cannot be considered sufficient cause. The prisoner was brought back to Franklin County in time for an arraignment on November 18, 1977. The 180 day period ran until January 24, 1978. Well over two months still remained after November 18, 1977, within which to proceed with the prisoner's trial. An overcrowded docket is not *per se* good cause to extend the time period. If need be the circuit court must take other cases off the trial docket by taking such actions as granting continuances in criminal cases which are not being prosecuted under the Interstate Agreement on Detainers Act. Similarly, civil cases should be continued if they are crowding a docket which must entertain a criminal case under the Act. The legislative mandate is clear. Failure to promptly dispose of detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." To effectuate the Act prosecutions of out-of-state detainers must take precedence over other causes.

Michigan has dealt with a case similar to the one before us and its courts have found to be without merit the state's contention

---

**6.** We note also that there is serious question as to whether the state may come into court after the statutory period has run and argue for a continuance. There is reason to believe that once the period has expired the court has lost jurisdiction over the prisoner and cannot proceed in the cause. Article III(1) states "a court having jurisdiction of the matter may grant any necessary or reasonable continuance" upon a showing of good cause. Article VI(1) also states, when outlining whether an action by a prisoner may toll the statute, that the court passing upon such action question shall have "jurisdiction of the matter." Courts in several states have interpreted similar clauses as barring the appropriate court from granting continuances sought by the state *after* the expiration of the statutory period. Thus, any contin-

uances by the circuit court must be sought and obtained while the court still has jurisdiction over the prisoner.

"To hold that the prosecutor may permit the 180-day period to expire, and then, at any time thereafter when the prisoner moves to invoke the sanction of dismissal, resist that application by a request for extension *nunc pro tunc* of the period, would be to eviscerate a vital element of the statutory scheme designed to effectuate its salutary policy."

*State v. Mason,* 90 N.J.Super. 464, 218 A.2d 158, 163[4] (N.J.App.1966). *See also, Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605, 607[2] (1973) (under Interstate Agreement on Detainers Act, motions for continuances must be made and acted upon before the expiration of the 180 day statutory period).

that an overcrowded docket is a *per se* showing of good cause.[7]

"A mere recitation of the factor of a crowded docket, without more, cannot warrant visiting on the incarcerated defendant a longer imprisonment than might otherwise be in store. If congestion and delay result from inadequate court staffing or funding, the inevitable results of those delays must fall upon the people, who have the power to remedy court congestion. *People v. Forrest,* 72 Mich.App. 266, 249 N.W.2d 384, 388[4] (1976)."

■ The State also asserts that the removal of the defendant from Franklin to St. Louis County as the movement of the relator to another jurisdiction and that this should be considered good cause for an extension of the 180 day period. We believe, however, that the State assumes a false premise. Movement of this prisoner to another county in the same state does not remove the prisoner from the jurisdiction of the sending county because the prisoner remains in the same state and is subject to the process of the courts of that state. All cases cited by the State deal with situations whereby the prisoner has been taken to another *state.* In such a situation most courts agree that such removal is "good cause" to grant a continuance.[8] In this case, however, the prisoner was merely transferred across the county line within the same state and was jailed some 60 miles from Franklin County still subject to the process of this state. We do not construe the statute, nor have any courts in Missouri or elsewhere yet construed this Act to allow so broad a definition of differing jurisdictions.

Here, the onus fell upon the prosecutor of Franklin County to produce the prisoner for arraignment on either November 1 or November 15 or risk suffering the consequences of a dismissal caused by failure of the court to give the cases precedence on a crowded trial docket. The prisoner's appearance for arraignment could have been secured by a writ of habeas corpus ad prosequendum, the same process by which she had been transported to St. Louis County. The State has failed in its burden to prove that the defendant could not have been brought back 60 miles to Franklin County for an arraignment.

■ Once a prisoner has gone forward with evidence showing that she has complied with all the specific requirements of the Interstate Agreement on Detainers, then the burden shifts to the State to produce evidence on the record that there was good cause to delay trial beyond 180 days. Here the prisoner has complied with the procedure outlined in the Act and has shown that 180 days have expired without the outstanding criminal complaints against her being tried. The State has failed to show that the prisoner has waived the 180 day period either explicitly, through an

7. In its brief the State relies heavily upon several recent cases from the United States Court of Appeals for the Fifth Circuit in which the court spoke of reasons for extensions of time when the court's docket was crowded. (We note both cases arose under either an alleged violation of Rule 50(b) of the Federal Rules of Criminal Procedure which demand prompt disposition of criminal cases, or a local federal district court rule which mandated speedy disposition of criminal cases.)

In *United States v. Bloom,* 538 F.2d 704 (5th Cir. 1976), the court held that while the time limit for the trial of the defendant had passed, the district court had properly proceeded with the case because (a) the case was complex and had several defendants, and (b) "[s]ubstantial portions of the delay in bringing this case to trial [were] attributable to the defendant . . . ." *Id.* at 711[2]. Neither of these dis-

tinctions are applicable in the instant case. And in *United States v. Methven,* 547 F.2d 896 (5th Cir. 1977), the court upheld the refusal of the lower court to dismiss the indictment because of a crowded docket. The court emphasized, however, that the "delay was occasioned by the Magistrate's exceptionally crowded *criminal* docket." *Id.* at 898 (emphasis added). The record before us in the instant case does not establish that the Franklin County circuit court calendar was filled exclusively with criminal cases and we do not say here that such condition would be reasonable cause for delay in a case involving the application of the Act.

8. *See, Price v. State,* 237 Ga. 352, 227 S.E.2d 368, 371 (Ga.1976); *State v. Wood,* 241 N.W.2d 8, 14[12] (Iowa 1976); *United States v. Mason,* 372 F.Supp. 651, 653[1] (N.D.Ohio, W.D.1973).

agreement, or implicitly, by the nature of being unavailable for trial. Nor has the State satisfactorily shown good cause why it would have been impossible or would have sorely impeded the court's work to have tried the cases within the 180 day period.

We are careful to note that what may constitute a waiver by the prisoner of the time period, or what the State may show to be good cause to extend the time limit of the statutory period will vary according to the facts of each case. We have only attempted to set down some of the principles which should be considered in any disposition of a case falling under the Interstate Agreement on Detainers, noting that the weight to be given these factors will vary under differing circumstances.

The writ of prohibition is made absolute.

KELLY, C. J., and GUNN and STEWART, JJ., concur.

JAMES D. CLEMENS, Senior Judge, dissents in separate opinion, in which REINHARD and CRIST, JJ., concur and dissent.

JAMES D. CLEMENS, Senior Judge, dissenting.

Except for a single point—which I consider critical—the majority opinion keenly analyzes the problems which may arise under "the Act", § 222.160 RSMo.1978. The unacceptable point is number (3) in the majority opinion, holding the defendant took no action that tolled the 180-day period in which the trial court should have brought her to trial.

When defendant was returned to Franklin County, pursuant to her request for disposition of numerous pending Missouri charges, she at first waived both counsel and a preliminary hearing but when the magistrate's transcript was filed in the circuit court she reneged and requested appointment of counsel, at whose request the cause was remanded for a preliminary hearing. That resulted in re-certification to the circuit court where an information was promptly filed. Before arraignment, pursuant to defendant's request for disposition of other charges, she was transferred to St. Louis County and on November 1, 1977 arraignment in Franklin County was continued because of her absence in St. Louis County. Again, on November 15 the case was called and arraignment was postponed because of defendant's continued absence. After that 29-day absence in St. Louis County defendant appeared in Franklin County on November 18 and pleaded not guilty.

By this time, defendant herself had consumed 116 days of court time, leaving only 64 days for the state to meet the 180-day limitation. Defendant's case was set, and then reset, for trial on January 26, 1978, the 182nd day after the clock had started to run. Defendant's motion to dismiss was then denied. Prompt disposition should take into consideration the fact Franklin County is not in continuous session. It is part of a three-county, two-judge circuit.

Here, defendant sought return to Missouri not only for disposition of three charges pending against her in respondent's Franklin County, but also for disposition of other charges pending against her in St. Louis, Pettis and Laclede counties. This case does not neatly fit into the pattern designed by the Act; its obvious design was to assure prompt disposition of a charge pending against an out-of-state defendant.

I would hold—as the respondent judge ruled—that the 180-day limitation had been tolled by the defendant's invited 29-day absence from his court's jurisdiction.

The record here shows defendant was absent from respondent's jurisdiction for 29 days—during the critical period for her arraignment and trial setting. But for this voluntary absence defendant's case could promptly have been set for trial well within the 180-day limitation period. This absence was caused by defendant herself; she had requested disposition of other charges pending against her in St. Louis County and for 29 days was there for that purpose.

The Act's time limitation is not inflexible. Although the Act is to be liberally construed to afford prompt disposal of pending

charges, it should not be construed to enable a charged defendant to obtain discharge by maneuvers calculated to produce delay. Paragraph 1 of Article III of the Act subjects the 180-day limitation to "any necessary or reasonable continuance". Paragraph 1 of Article VI declares the time limitation shall be tolled "for as long as the prisoner is unable to stand trial".

The majority opinion does limit its holding to the facts of this case. Its rationale, however, is that delays in bringing a case to trial, even when as here that is necessitated by a defendant's affirmative action, those delays should not be charged against a defendant in computing the 180-day limitation. If that is the law it would open the gates to a host of dilatory actions. For example, by last-minute action a defendant could thwart a timely trial on such grounds as his illness or absence of counsel, by request for a mental examination, or delay to procure an essential defense witness. Or, even without his own affirmative action, a defendant could force dismissal of charges by other events necessitating a last minute delay in trial, such as illness of the judge or a juror, or any event that might result in a mistrial.

Strict application of the 180-day limitation is incongruous here for prompt disposition of the multiple charges against defendant in four different counties. Considering the consumption of time available to defendant by preliminary moves in each of the pending cases, it is inconceivable that the state could thereafter afford defendant trial in every case within 180 days of the request for disposition of all pending charges.

The issue here was whether during the critical period of her 29-day absence defendant was—voluntarily—"unable to stand trial", and the 180-day time limit was thereby tolled. I would say yes. The precise issue does not appear to have been ruled but a parallel case arose in *United States v. Mason*, 372 F.Supp. 651 (D.C.Ohio), where the court held: "Initially, the Court agrees with the Government that the time period must be tolled while the defendant was standing trial in Michigan. (citation). This appears to be the only logical result, since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously."

Here, defendant was not standing trial in St. Louis County, but she was there at her own request for judicial determination of a felony complaint against her. I would hold that during the critical 29-day period defendant was "unable to stand trial" in Franklin County and running of the 180 day time limit was tolled for that time. It would follow that the respondent judge did not improperly deny defendant's motions to dismiss and was not without jurisdiction to proceed. I would hold our preliminary writ of prohibition was improvidently granted.