**Gerald Issac SASSOON,**
**Petitioner-Appellant,**

v.

**Leroy STYNCHOMBE, Sheriff and Arthur K. Bolton, Attorney General of the State of Georgia, Respondents-Appellees.**

No. 80–7525.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 28, 1981.

Frank J. Petrella, Atlanta, Ga., for petitioner-appellant.

Harrison Kohler, John W. Dunsmore Jr., Asst. Attys. Gen., John C. Walden, Senior Asst. Atty. Gen., Atlanta, Ga., for respondents-appellees.

Michael D. Anderson, Asst. Dist. Atty., Jonesboro, Ga., Clayton Judicial Circuit, for State of Ga.

---

\* District Judge of the Southern District of Alabama, sitting by designation.

Before KRAVITCH and HENDERSON, Circuit Judges, and THOMAS \*, District Judge.

HENDERSON, Circuit Judge:

Gerald Issac Sassoon, a prisoner presently in custody pursuant to the judgment of a court of the State of Georgia, appeals from the district court's denial of his application for a writ of habeas corpus. We affirm the judgment, but for reasons different than those relied upon by the district court. The district court found that Sassoon's incarceration violated federal law, but that he had waived the violation. We find that the question can properly be considered in the federal courts, but that there was no federal violation.

In 1974 Sassoon pleaded guilty to interstate transportation of forged securities and began the service of his sentence in the United States Penitentiary in Atlanta. On May 23, 1974, a grand jury in Clayton County, Georgia, returned an indictment against him for theft by deception. In March, 1975, Sassoon learned that Clayton County authorities had lodged a detainer against him pursuant to the Interstate Agreement on Detainers, 18 U.S.C.A. App. (1981 Supp.); Ga. Code Ann. §§ 77–501b—77–516b (hereinafter referred to as the "Detainer Agreement").[1]

On July 7, 1975, Sassoon moved for dismissal of the Clayton County indictment for want of a speedy trial. This dismissal, he reasoned, would also "expunge the detainer from the record." See Detainer Act Article III(a). The state responded by providing federal authorities with written notice that they would accept temporary custody of Sassoon. See Article IV(a). See generally United States v. Umbower, 602 F.2d 754 (5th Cir. 1979), cert. denied, 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980); United States v. Scallion, 548 F.2d 1168, 1173 (5th Cir. 1977), cert. denied, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978).

---

1. The Georgia and federal version of the Detainer Agreement are virtually identical. See note 4, infra.

On August 21, 1975, Sassoon was removed to the Clayton County jail. On August 26, 1975 he was arraigned and returned to the United States Penitentiary in Atlanta. On September 24, 1975 he was taken to Clayton County Superior Court for trial which concluded with his conviction on September 26, 1975. He was returned to the penitentiary in Atlanta on October 2, 1975. On October 24, 1975, he was again brought before the state trial court, where he was sentenced to a ten-year term in prison. Later in the day he was transported back to Atlanta.[2] His conviction was affirmed by the Georgia Court of Appeals. *Sassoon v. State*, 138 Ga.App. 172, 225 S.E.2d 732 (1976).

In October, 1976, Sassoon filed a petition for a writ of habeas corpus in the Superior Court of Fulton County. He alleged that his indictment should have been dismissed when the Clayton County authorities returned him to the Atlanta penitentiary without first placing him on trial.[3] Construed literally, the Detainer Agreement entitled him to relief.

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Article IV(e), 18 U.S.C.A. App. § 2 (1981 Supp.); Ga. Code Ann. § 77–505b(e).[4]

The state asserted that while he was awaiting trial in Clayton County Sassoon requested to be returned to Atlanta for medical treatment, thereby waiving his right to a trial prior to returning to federal custody. The Fulton County Superior Court found that no such request was made and granted the writ.

The Supreme Court of Georgia reversed. *State v. Sassoon*, 240 Ga. 745, 242 S.E.2d 121 (1978). The court observed that there had been conflicting evidence on whether Sassoon had requested medical treatment in Atlanta, but declined to reach the issue. The court instead held that a "technical" violation of the Detainer Agreement does not infringe a prisoner's protected rights when there is no showing of injury or prejudice.[5]

Sassoon then brought the present action in the federal district court pursuant to the provisions of 28 U.S.C.A. § 2254, making essentially the same allegations. The district court found it "undisputed that a violation of the detainer agreement exists." Order at 1. The court also rejected the Georgia Supreme Court's conclusion that demonstrated prejudice is a prerequisite to habeas relief. *Id.* at 2. The court nevertheless denied the writ, stating that Sassoon's failure to raise the issue on his direct appeal constituted a waiver of his rights. *Id.* at 3–4.

In this appeal Sassoon insists that he did not waive his Detainer Agreement rights and that in any case, the district court could not have found a knowing waiver without first conducting an evidentiary hearing. The state, joined by the Clayton County district attorney as amicus curiae, assert that Sassoon did know of his rights when he appealed his conviction.[6]

Although the Clayton County district attorney would have us hold otherwise, it is too late in the day to argue that Sassoon was returned to the Atlanta peni-

---

**2.** Sassoon remained in the custody of a United States Marshal throughout October 24, 1975. *See* 18 U.S.C.A. App. § 2 art. V(a) (1981 Supp.).

**3.** Sassoon only complains of the pre-trial transfer. The Supreme Court of Georgia held that the relevant sections of the Detainer Agreement are not addressed to post-trial transfers. 240 Ga. 745 at 749, 242 S.E.2d 121.

**4.** The quotation is from the United States Code Annotated. The Georgia and federal enactments differ in punctuation and capitalization, but are substantively identical.

**5.** Counsel conceded that the transfer had not interfered with Sassoon's rehabilitation. 240 Ga. at 747, 242 S.E.2d 121.

**6.** The amicus curiae brief also maintains that there was no violation absent prejudice.

tentiary at his own request.[7] The district court's denial of relief was based not on Sassoon's waiver of his rights under the Detainer Agreement but rather the waiver of the state's violation. This waiver occurred, the court said, when Sassoon neglected to raise the issue on direct appeal. It is well established that a defendant's failure to comply with the procedures adopted by the state to preserve errors will sometimes immunize those errors from subsequent federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, the *Sykes* bar only applies when the state courts rely on a procedural default. It "does not preclude federal habeas review of a petitioner's constitutional claim if the state court adjudicates the claim on the merits." *Thompson v. Estelle*, 642 F.2d 996, 998 (5th Cir. 1981). As the district court noted, the Georgia Supreme Court "expressly pretermitted 'questions of waiver, estoppel and unpermissible collateral attack raised by the State as a result of Sassoon's proceeding by way of petition for the writ of habeas corpus rather than by appeal.' " Order at 3, quoting 240 Ga. at 747, 242 S.E.2d 121. Where "the state appellate courts adjudicated the issue on the merits . . . [it is] open on federal habeas. The rule of *Wainwright v. Sykes* does not foreclose federal courts from reaching issues state courts treat as open." *Cannon v. State of Alabama*, 558 F.2d 1211, 1216 n. 12 (5th Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Accord Thompson*; *Moran v. Estelle*, 607 F.2d 1140, 1141–42 (5th Cir. 1979). Since the Georgia court addressed the merits, we are bound to follow the same course.

■ A state prisoner is entitled to federal habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254. The Supreme Court recently held that the Interstate Agreement on Detainers "is an inter-

state compact approved by Congress and is thus a federal law subject to federal rather than state construction." *Cyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 706, 66 L.Ed.2d 641 (1981); *see also Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975). The ultimate question here, then, is whether federal law requires release for a violation of section IV(e) of the Detainer Agreement when the prisoner is not prejudiced thereby, *see* note 5, *supra*.

As stated earlier, the Detainer Agreement provides that in the event the prisoner is returned to the sending jurisdiction before trial, the indictment "*shall* not be of any further force," and the trial "court *shall* enter an order dismissing the same with prejudice." (emphasis supplied). This language, which is the only conceivable basis for release, cannot compel issuance of the writ where the prisoner does not even allege that he was harmed by the violation. We agree with the Supreme Court of Georgia which considered the issue at length, albeit apparently as a matter of state law, and concluded that release is not justified where no "legitimate interest" of the prisoner is defeated by the violation.

"[A] primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding." 449 U.S. at 449, 101 S.Ct. at 712. No protection is necessary where no injury is threatened. *Cf. Mars v. United States*, 615 F.2d 704, 707 (6th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980) (no § 2255 relief if no harm from violation); *United States v. Chico*, 558 F.2d 1047, 1049 (2d Cir. 1977), *cert. denied*, 436 U.S. 947, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978) (no violation where "merely removed for a few hours at a time and immediately returned"). *But cf. United States v. Williams*, 615 F.2d 585, 589–90 (3d Cir. 1980) (preserved violation of Agreement would be "fundamental defect" meriting § 2255 relief). As mentioned by the Supreme Court of Georgia, the evidence is

---

7. Although the question is not before us, it seems that a prisoner returned at his own request would not have waived a violation of the Detainer Agreement, but rather waived his rights thereunder—in other words, there would have been no violation. *Cf. United States v. Boggs*, 612 F.2d 991, 993 (5th Cir. 1980); *Scallion*, 548 F.2d at 1170.

uncontroverted that Sassoon's return to the Atlanta penitentiary allowed him to participate in the extensive rehabilitative education program available there.

Like Georgia's highest court,

This court declines to apply [Article IV(e)] mechanically contrary to the stated purposes of the Interstate Agreement on Detainers because such an application would be based upon a construction of the Agreement against, rather than in behalf of, the legitimate interest of Sassoon in receiving rehabilitative education while in federal custody. On the facts of the present case, Clayton County's keeping Sassoon for trial, rather than returning him immediately after arraignment, would have interfered with Sassoon's legitimate interest in participating in the program of rehabilitation in which he was enrolled. A brief removal of a prisoner to the receiving jurisdiction and his prompt return to the sending jurisdiction after arraignment and prior to trial is consonant with the intention of the Interstate Agreement on Detainers....

240 Ga. at 749, 242 S.E.2d 121.

The judgment of the district court is AFFIRMED.