STATE ex rel. Jay C. TAYLOR, Relator,

v.

Glennon E. McFARLAND, Judge, Circuit Court of Clay County, Missouri, Seventh Judicial Circuit, Division No. 1, Respondent.

Nos. WD 35298, WD 35365.

Missouri Court of Appeals, Western District.

March 20, 1984.

As Modified July 3, 1984.

Motion for Transfer to Supreme Court Overruled July 3, 1984.

Application to Transfer Denied Oct. 9, 1984.

James W. Fletcher, Public Defender, Kansas City, for relator.

Victor B. Peters, Platte City, for respondent.

Before NUGENT, P.J., and DIXON and KENNEDY, JJ.

KENNEDY, Judge.

Relator filed here two applications for writs of prohibition, one to prohibit Judge McFarland from proceeding with the trial of charges of rape, sodomy and robbery against relator, and the other to prohibit his proceeding with the trial of charges of stealing a motor vehicle and burglary. We

issued our preliminary writs in both cases, and have consolidated the two. We now quash the writs in both cases.

On May 9, 1980, there were filed in Platte County, Missouri, three separate complaints charging relator with the crimes of sodomy, rape and first-degree robbery, alleged to have occurred in Platte County on March 23, 1980, growing out of a single incident.

When these charges were filed, relator was in custody in Marion County, Indiana, on unrelated charges. He was extradited from there to the State of California for trial in California on charges pending there. He was ultimately on January 12, 1982, sentenced in California on those charges and was imprisoned in a California prison. He was brought from California to Missouri on January 12, 1983, for trial on the charges pending in Platte County.

After his return to Missouri, charges were filed accusing him of stealing a motor vehicle and of first-degree burglary, growing out of the same incident as the rape, sodomy and robbery charges. These charges are the subject of a second application for writ of prohibition, which as noted above has been consolidated with the first. It involves different issues and we will lay it aside and deal with it in Section III of the opinion.

On February 19, 1982, while relator was in prison in California under sentences imposed by the District Court of Orange County, he initiated a request for the disposition of the charges pending against him in Missouri under the "Agreement on Detainers", §§ 217.490–217.520, RSMo Cum. Supp.1983 (formerly §§ 222.160–222.220, RSMo 1978). (There is an issue as to when or whether he effectively triggered the 180-day period during which the law requires that charges pending against him in Missouri—the "receiving" state—are required to be tried, but for our purposes we will assume that he did so on the above date, February 19, 1982.)

After relator initiated his request for speedy disposition of the Missouri charges, the prosecuting attorney of Platte County without undue delay commenced efforts to have relator returned to Missouri for trial. Presumably, except for the intervention of events described in the next succeeding paragraphs, relator would have been returned and placed upon trial during the 180-day period.

However, on January 5, 1982, Judge Leonard H. McBride, a judge of the Superior Court of Orange County, California, had made an order in a case entitled People v. Senteno, then pending in Orange County, which read as follows: "Good cause appearing therefore, I hereby order Jay Coy Taylor, a material witness in the above entitled case, duly subpoenaed, shall remain in this jurisdiction and shall not be released to Missouri until such time as this case has been resolved." Relator at this time was in jail in Orange County, awaiting sentence on the California charges of which he had been convicted. Later, on May 4, 1982, after relator had been sentenced and was in San Quentin State Prison, our record shows that Judge McBride ordered that Taylor be conveyed from the prison to Santa Ana, California to testify in the case of People v. Senteno on June 1, 1982, and then returned to San Quentin prison. Both such orders were made upon the application of defendant Senteno.

The Senteno case was evidently not tried on June 1, the date mentioned in Judge McBride's May 4 order. We infer from statements in correspondence from California prison officials to the Platte County prosecutor that the case was set for trial on April 19, then on June 1, then on July 19, then on August 1. The record before us does not show when it was finally tried, if at all, but on January 12, 1983, defendant finally was returned to Missouri under the procedure set up by the Agreement on Detainers. Presumably the Senteno case had been tried or Judge McBride's order had for some other reason been dissolved.

In the meantime, the prosecuting attorney of Platte County during the weeks and months following defendant's request for disposition of the detainers, had been in touch with California prison authorities by

telephone and by mail, seeking to arrange for relator's return to Missouri. As the 180-day period drew near its end (it would have expired August 19, 1982), he appeared before Platte County Associate Circuit Judge Owens Lee Hull, Jr., in whose division the rape, sodomy and robbery cases were pending, and sought and secured an order saying that the 180-day period "should be tolled" from the date of Judge McBride's January 5, 1982 order. Judge Hull's order purported to order that such period be tolled from that date for so long as defendant was "unable to stand trial in the State of Missouri". Neither defendant nor any counsel of his—he had no attorney in Missouri nor had any been appointed for him—was present in court or had received any notice.

■ On the basis of the foregoing, relator filed motions for the dismissal of the charges of rape, sodomy and robbery, which furnished the basis for the detainers of which relator in the first place demanded early disposition. The motions were made in the associate circuit court before preliminary hearing and in the circuit court after relator was bound over. Upon the trial court's refusal to dismiss the charges, defendant has sought our writ of prohibition, a proper remedy if relator is correct in the contentions he makes here. *State ex rel. Saxton v. Moore*, 598 S.W.2d 586 (Mo.App. 1980). We issued our preliminary writ of prohibition. The parties have briefed the case carefully and have argued the same orally. The question before us is whether to quash our preliminary writ or to make the same absolute.

I

Relator's argument is as follows: The Agreement on Detainers, of which both Missouri and California are parties, provides a certain procedure for a prisoner in one state to obtain trial upon charges pending in another state which has lodged against him a detainer with the prison officials of the state where he is incarcerated. The agreement provides that if the defendant is not placed upon trial within 180 days

from the time he effectively activates the Agreement on Detainers machinery, he is entitled to dismissal. Article III, Section 4, § 217.490, RSMo Cum.Supp.1983 (formerly § 222.160, RSMo 1978).

The agreement itself (where the request is initiated by the prisoner and not by the receiving state) provides only two circumstances under which the 180-day limitation period is extended. One of those circumstances is that (Article III, Section 1) "For good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." The other circumstance which extends the time is described in Article VI, Section 1, stating that "the running of the time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." The two stated causes for extending the time are not rigidly exclusive, as we shall see, but the 180-day limitation period is somewhat elastic, depending upon the genuine exigencies of the case.

The state makes the argument that defendant was "unable to stand trial" from and after January 5, 1982, until after the Senteno trial, or until Judge McBride's order was dissolved in some manner. The relator, on the other hand, says that the defendant was not "unable to stand trial" during that period of time; that Judge McBride's order was invalid; and that the State of Missouri should have initiated legal proceedings to wrest relator's custody from California's grasp. He says that when he made the request for the speedy disposition of the detainers, his responsibility was at an end and it was then up to the demanding state, Missouri, to get him delivered from California to Missouri and placed upon trial. He cites us to cases which hold that "the onus of compliance [is] upon the officials of the incarcerating and receiving states, rather than upon the prisoner. The officials are generally in better position to advance the case and to secure cooperation from each other than is

the prisoner." *State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590 (Mo.App.1980).

Thus the issues are drawn between the parties.

■ We hold that defendant was "unable to stand trial," within the meaning of Article VI, Sec. 1, during the time he was held in California under Judge McBride's order and his custody was withheld from Missouri. The reasoning of the following cases supports our decision:

*State of Florida v. Ivey,* 410 So.2d 636 (Fla.Dist.Ct.App.1982)—In this case the defendant had been transferred by the incarcerating state to the receiving state. While in the custody of the receiving state during the pendency of his trial, a U.S. Magistrate in the Southern District of Florida issued a writ of habeas corpus ad testificandum directing that the prisoner be taken to Fort Lauderdale to testify before a federal grand jury by March 30. Although the writ directed the return of the defendant with all convenient speed to the county where the charges were pending on completion of the testimony, federal marshals instead transported him back to the federal correctional institution where he had been in prison. The state authorities secured his custody by a writ of habeas corpus ad prosequendum. The court held that the statute was tolled by defendant's inability to stand trial "[d]uring the time period when [he] was required by federal authorities to return to give testimony and the later delay when federal marshals transported [him] back to the Federal Correctional Institution...." 410 So.2d at 637.

*State v. Wood,* 241 N.W.2d 8 (Iowa 1976) —In that case defendant had been a prisoner in the Wisconsin State prison. He requested disposition of Kansas and Iowa detainers under the Interstate Agreement on Detainers. The Wisconsin prison authorities deemed the Kansas detainer to have priority, and notified the Iowa authorities that the county attorney's office in Iowa would be notified as soon as the Kansas proceedings were completed. The defendant was transferred to Kansas on May 1, returned to Wisconsin June 14, and turned over to Iowa authorities on July 3. Defendant's trial was not commenced within the 180-day period. The court rejected his claim that the Iowa prosecution ought to be dismissed. He was held to have been "unable to stand trial" during the pendency of the Kansas proceedings. 241 N.W.2d at 14. The court further said:

> The court having jurisdiction over the matter determines whether defendant was unable to stand trial and if so how long the inability existed. Having determined the number of unavailable days, the court subtracts that number from the total number of days elapsed to determine if the 180-day period has been exceeded. There is therefore no requirement that the prosecution seek a continuance prior to the statute's running when the inability to stand trial under Article VI is the reason for delay.

241 N.W.2d at 13–14.

*United States v. Mason,* 372 F.Supp. 651 (N.D.Ohio 1973)—Defendant was a prisoner in a state prison in Ohio. He requested disposition of two detainers, one based upon a federal charge pending in the United States District Court for the Northern District of Ohio, and the other a state charge pending in Michigan. The Ohio prison authorities transferred the defendant to Michigan on September 11, where he was tried and was sentenced on February 2. On February 6 he was returned to Ohio. Defendant's trial on the federal charge in Ohio did not commence within the 180-day period, but the court held that the charge was not subject to dismissal under the Interstate Agreement on Detainers Act. 372 F.Supp. at 653. Said the court:

> Initially the court agrees with the government that the time period must be tolled while the defendant was standing trial in Michigan.... This appears to be the only logical result, since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously. Therefore, the Court finds that the time was tolled for 148 days from September 11, 1972, to February 6, 1973, in that the defendant

was unable to stand trial in this Court. (Citation omitted.)

*Id.* at 653.

It is apparent from the foregoing cases that well-reasoned decisions hold that a defendant may be "unable to stand trial" for reasons other than a physical or mental disability. The inability may be imposed by other kinds of restraint, including—as we now hold—the January 5, 1982, order of Judge McBride and the decision of the California prison officials to obey the order. (For a contrary view, see cases cited in margin.[1])

█ The tolling was automatic; it did not depend upon Judge Hull's order of August 18. The relator's being "unable to stand trial" was "determined by the court having jurisdiction of the matter" when relator's motions to dismiss were overruled by Judge Hull before the preliminary hearing and by Judge McFarland when the circuit court acquired jurisdiction of the case. See *State v. Wood,* 241 N.W.2d 8, 13–14 (Iowa 1976).

Relator argues that Judge McBride's January 5, 1982, ex parte order was unconstitutional on its face and invalid, and argues that it should not be allowed to deny relator his right to a speedy trial on the Missouri charges. Relator however does not cite any authorities supporting his position, nor does he develop his argument by any rationale, except his reliance upon those cases which hold that it is up to the states, and particularly the receiving state, to enforce the Agreement. The respondent on the other hand does not attempt to convince us that the order was valid. We are not equipped, really, to decide that issue, nor do we need to do so in order to decide the case before us. The point is that defendant was subpoenaed to testify in a trial then pending in California. Defendant was a witness in an assault case or a murder case against one Phillip Senteno, arising out of a jailhouse beating. Senteno had subpoenaed relator as a witness. It was Senteno who had applied for the January 5 order, and also for the May 4 order.

The California prison officials considered the McBride order as binding. They informed the Platte County prosecuting attorney that they had consulted their attorney who had so advised them. From California's standpoint, it seemed unwise to send relator to Missouri to answer the charges against him, from whence he would have to be fetched if Senteno's trial was held before he was returned to California. Or he would have to give his testimony by deposition, an unsatisfactory substitute for his personal testimony. In a statement from Senteno's attorney which is included in the record before us, the attorney said that those were the considerations which prompted him to seek the McBride order.

Relator says that Missouri should have commenced legal action against California or against its prison officials to secure the custody of relator. The Platte County prosecutor did take up this matter with the Missouri Attorney-General but no legal action was undertaken. This seems to us to have been an inordinately cumbersome move. Legal action would doubtless be justified, perhaps even required, had the impasse continued for an unreasonable length of time, or had it become clear to the Platte County prosecuting attorney that legal action would be necessary in order for Missouri to gain custody. However, the trial of the Senteno case, for which relator was being held in California, might have been held at any time after the McBride order of January 5. The record before us shows that relator's "out-to-

---

1. In *Stroble v. Anderson,* 587 F.2d 830 (6th Cir. 1978), cert. denied, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), the court held that a prisoner's being tried on other charges does not render a prisoner "unable to stand trial" and does not automatically toll the running of the limitation period. That court would hold that a prisoner's trial on other charges might furnish grounds for a continuance under Article VI. Sec. 1 of the Agreement, but any such continuance would have to comply with the procedural requirements of the Act in having been granted "in open court in the presence of defendant or his attorney". See also *State v. Johnson,* 188 N.J.Super. 416, 457 A.2d 1175 (1982).

court" appearance (for the Senteno case testimony, presumably) was scheduled from time to time on April 19, July 19 and August 1. Curiously, the file does not show when or if Senteno was tried. The record is silent after August 18 when Judge Hull made his order in the Platte County Associate Circuit Court, till January 13, 1983, when defendant showed up in the Associate Circuit Court of Platte County. We can assume, though, that the impediments to relator's release to Missouri were removed shortly before January 13, 1983, from the fact that he makes no complaint of any undue delay after he became available for return to Missouri until the time of his actual return. He rests his case rather upon the ineffectiveness of the McBride order to toll the statute for any space of time whatever.

From the standpoint of the Platte County prosecutor, on the other hand, at the time he began his efforts to secure relator's return to Missouri in March, 1982, McBride's order seemed likely to be dissolved within a short time and relator would be available to Missouri authorities. It might have happened on April 19, then on June 1, then on July 19, then on August 1—each date within the 180-day period. Considering the time and expense involved in legal action, and the uncertainty of the result, we cannot say that the Platte County authorities acted in any way but prudently in postponing legal action to secure what would probably be theirs sooner than it could be compelled by court decree.

We hold therefore, on the basis of the record before us, that the statutory 180-day period was tolled until January 12, 1983, when relator was returned to Missouri for trial.

## II

The foregoing does not quite decide the case. After relator's return to Missouri on January 12, 1983, still relator was not placed upon trial within 180 days. The 180 days would have expired July 11, 1983. The trial was scheduled to commence on October 3, 84 days later. We however issued our stop order on September 30, upon relator's application, and our preliminary writ of prohibition on October 13, which has suspended the proceedings since that time.

■ From the record before us, which consists only of the associate circuit court's docket sheet and the trial court's docket sheet after defendant was bound over upon preliminary hearing, it appears that a great deal more than the 84 days' excess can be accounted for by pretrial motions filed by defendant, including application for change of judge and change of venue, and by necessary and reasonable continuances allowed by Article III, Sec. 1 of the Agreement. It appears also that the state was at all times attempting in good faith to expedite the trial. On the basis of this record we are unable to say that the defendant was entitled to dismissal and that the trial court is without jurisdiction to proceed. *State v. Soloway,* 603 S.W.2d 688 (Mo.App. 1980); *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53 (Mo.App.1980). *See also People v. Collins,* 85 Ill.App.3d 1056, 41 Ill.Dec. 373, 407 N.E.2d 871 (1980); *State v. Vaughn,* 296 N.C. 167, 250 S.E.2d 210, 217 (1978), cert. denied, 441 U.S. 935, 99 S.Ct. 2060, 60 L.Ed.2d 665 (1979); *State v. Grizzell,* 584 S.W.2d 678 (Tenn.Cr.App.1979). *Compare* allowable delays under Speedy Trial Act, § 545.780, RSMo Supp.1984.

## III

One other point remains which may be quickly disposed of.

The charges of stealing a motor vehicle and of burglary in the first degree were filed March 17, 1983, and the information was filed in the circuit court on April 28, 1983, more than three years after the alleged offenses.

■ Relator claims that the prosecution is barred by the three-year statute of limitations applicable to Class B and Class C felonies, § 556.036.2(1), RSMo 1978. While the prosecution was "commenced" after three years had passed since the offense, the statute was tolled during the period of

relator's absence from the state. § 556.-036.6(1), RSMo 1978. Our record shows him to have been absent from the state at least from April 21, 1980, till January 12, 1983. The information filed April 28, 1983, was filed well within the three-year limitation as so enlarged.

Our preliminary rules in prohibition, both in the rape, sodomy and robbery charges, and in the burglary and motor vehicle stealing cases, are quashed.

All concur.