Aldric ELLSWORTH, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 71665.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 27, 1998.

Susan McGraugh, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Movant, Aldric Ellsworth, appeals from the denial, without an evidentiary hearing, of his motion for postconviction relief pursuant to Rule 24.035. We affirm.

While incarcerated in Centralia, Illinois, Movant was charged by the State of Missouri with four counts of robbery in the first degree and one count of attempted robbery in the first degree. On or about August 17, 1993, Movant executed a "Request for Disposition of Indictments, Informations or Complaints" (hereinafter referred to as Request for Disposition) pursuant to Section 217.490, RSMo 1994,[1] hereinafter referred to as the Interstate Agreement on Detainers Act (IADA). This request was received by the court and prosecuting attorney on August 19, 1993.

---

1. All statutory references are to RSMo 1994 un-   less otherwise noted.

On February 22, 1994, Movant pleaded guilty to these charges. On July 1, 1994, prior to his sentencing, Movant was granted leave to withdraw his guilty pleas, and the matter was returned to the trial docket. On June 9, 1995, Movant again entered guilty pleas and was sentenced to twenty years on each of the four counts of robbery in the first degree and ten years for the offense of attempted robbery in the first degree, the sentences to run concurrently.

On July 5, 1995, Movant filed a timely motion for postconviction relief pursuant to Rule 24.035. Movant alleged the trial court erred in sentencing him because more than 180 days had elapsed since he filed the Request for Disposition pursuant to the IADA. In its findings of fact, the motion court found that 186 days had elapsed between the receipt of his Request for Disposition under the IADA and Movant's first entering of guilty pleas. Of the 186 days, the court found 48 days were chargeable to Movant and 138 days were chargeable to the State. The court also found that between Movant's withdrawal of his guilty pleas and his subsequent, second entering of guilty pleas, 342 days had elapsed. The court found that of these 342 days, 154 days were chargeable to Movant and 188 days were chargeable to the State. Even though 180 days had expired, however, the court denied Movant's motion concluding his guilty pleas waived any alleged error or defect under the IADA.

In his sole point on appeal, Movant contends the court clearly erred in denying his motion for postconviction relief because he was not brought to trial within 180 days of his Request for Disposition of the Missouri charges as is required by the IADA; and therefore, the court lacked jurisdiction to accept his guilty pleas entered on June 9, 1995. The State, however, asserts the motion court's ruling was not clearly erroneous because Movant's pleas of guilty waived the 180-day limitation of the IADA.

■ We must affirm the ruling of the motion court unless its findings and conclusions are clearly erroneous. Rule 24.035(k); *Meyer v. State*, 854 S.W.2d 69, 70 (Mo.App. E.D. 1993). Findings and conclusions are clearly erroneous if, "after review of the entire rec-

ord, the appellate court is left with the definite and firm impression that a mistake has been made." *State v. Roll*, 942 S.W.2d 370, 375 (Mo.1997).

■ The IADA is a congressionally sanctioned interstate compact subject to federal construction. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). *See Kenneth–Smith v. State*, 838 S.W.2d 113, 117 (Mo.App. E.D.1992); *see also People v. Wanty*, 189 Mich.App. 291, 471 N.W.2d 922, 923 (1991). The purpose of the IADA is stated in Article I of the Act:

> [C]harges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

Section 217.490. *See United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978) (the IADA "is designed 'to encourage the expeditious and orderly disposition of charges outstanding against a prisoner and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints' ").

Under Article III(1) of the IADA:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the ba-

sis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Article V(3) states the procedural remedy for a violation of paragraph 1 under Article III:

... in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV of this agreement, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Section 217.490. *See Fex v. Michigan*, 507 U.S. 43, 45, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993).

█ Relying on this language, Movant argues that upon expiration of the 180 days, the motion court lost jurisdiction to accept his guilty pleas. We disagree.

█ Federal courts have characterized the 180-day limitation under Article III of the IADA as a "statutory right to speedy trial." *Yellen v. Cooper*, 828 F.2d 1471, 1474 (10th Cir.1987). *See Kenneth–Smith v. State*, 838 S.W.2d 113, 117 (Mo.App. E.D. 1992) ("rights created by the IADA are statutory, not fundamental or constitutional in nature"). The general rule in Missouri is that " 'a plea of guilty voluntarily and understandably made waives all nonjurisdictional defects and defenses.' " *Hagan v. State*, 836 S.W.2d 459, 461 (Mo.1992). A defendant's guilty plea also bars any claims he or she has " 'based upon either statutory or constitutional guaranties of a speedy trial.' " *Beach*

*v. State*, 488 S.W.2d 652, 654 (Mo.1972). *See Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (" 'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' "). We find that because rights created by the IADA are statutory in nature, Movant waived the 180-day limitation upon entering a plea of guilty. *See Beachem v. Attorney General of Missouri*, 808 F.2d 1303, 1304 (8th Cir.1987); *United States v. Fulford*, 825 F.2d 3, 10 (3rd Cir.1987) (the fact that a defendant's guilty plea acts as a waiver of the provisions of the IADA is a fundamental principle).

Moreover, our finding that the 180-day limitation of Article III is waived by a defendant's plea of guilty is consistent with federal court decisions and their construction of identical language in Article IV(5). In *United States v. Palmer*, the Third Circuit considered whether the defendant could assert a violation of Article IV(e) of the IADA after he had pleaded "guilty without reservation" to the charges against him. *United States v. Palmer*, 574 F.2d 164, 166 (3rd Cir.1978) *cert. denied*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978). Article IV(e) states:

If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, *such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.*

*Id.* at 165 n. 1 (emphasis added). The defendant in *Palmer* argued this provision stripped the court of subject matter jurisdiction, and therefore, the court could not accept his guilty plea. *Id.* at 166. If defendant was correct that the violation divested the court of subject matter jurisdiction, no subsequent guilty plea could waive that lack of jurisdiction.

The Court in *Palmer* compared a defendant's right to dismissal due to a violation of the IADA to a defendant's "right to suppress a confession which may constitute the bulk of the government's proof against a defendant" and "the right to a dismissal because of an improperly constituted grand jury." *Id.* Because the "Supreme Court has held these rights—even though derived from the Constitution—are also not sufficiently 'fundamental' to permit avoidance of a voluntary plea," the Third Circuit concluded "it would be anomalous for [them] to hold that the statutory rights under the IADA cannot be waived." *Id.* The Court concluded that a defendant's rights under the IADA are only procedural and, therefore, waivable. *Id.* In coming to this conclusion, the Court reasoned that the "statutory right to dismissal due to an administrative violation of these rules [under the IADA] is ... not 'fundamental,' even though its impact on a defendant may be great." *Id.* Acknowledging that the "purposes of the IADA are to implement a defendant's right to a speedy trial and to avoid excessive interference with a prisoner's rehabilitation in the state prison system," the Court also found that these purposes would not be "disserved by [its] ruling that the benefits of the act may be waived by a guilty plea." *Id.*

The Eighth Circuit similarly rejected the defendant's characterization of the language in Article IV(e) of the IADA as jurisdictional in *Camp v. United States.* Instead, the Court explained:

> If Article V(e) is violated and the indictment therefore loses its "force or effect," the condition precedent is unsatisfied and the prosecution is technically precluded from proceeding further. The sanction of dismissal with prejudice contained in Article IV(e), then, is a relatively severe sanction designed to compel prosecutorial compliance with the procedures set forth in the IAD[A]. It is, however, a sanction without effect on the jurisdiction of the district court.

*Camp v. United States,* 587 F.2d 397, 399 n. 4 (8th Cir.1978). The Court concluded that "a violation of Article IV(e) of the IAD is a non-jurisdictional error and, as such, is waivable by a criminal defendant." *Id.* at 400.

Finally, Movant's reliance on the language in Missouri's *intrastate* companion to the IADA, the Uniform Mandatory Disposition of Detainers Law, codified in Sections 217.450–217.485, hereinafter referred to as the UMDDL, for his proposition that the expiration of the 180–day limitation divests the court of jurisdiction under the IADA is misplaced. Section 217.460 of the UMDDL provides that upon expiration of 180 days, "no court of this state shall have jurisdiction of such [untried] indictment, information or complaint, nor shall the untried indictment, information or complaint be of any further force or effect; and the court shall issue an order dismissing the same with prejudice." The mandate of Section 217.460 is clear: "a loss of jurisdiction over a pending charge results if it is not tried within the statutorily designated time period." *Kenneth–Smith v. State,* 838 S.W.2d 113, 116 (Mo.App. E.D. 1992) *(citing State ex rel. Kemp v. Hodge,* 629 S.W.2d 353, 356 (Mo.1982)). *See O'Neal v. State,* 925 S.W.2d 480 (Mo.App. W.D.1996). A guilty plea does not waive a defendant's claim of lack of jurisdiction under this section of the UMDDL because " 'when a trial court lacks jurisdiction over a criminal charge it also lacks jurisdiction to accept a guilty plea to such charge.' " *O'Neal v. State,* 925 S.W.2d 480, 483 (Mo.App. W.D.1996). By contrast, the IADA has no such express language divesting the court of jurisdiction.

However, Movant argues this court "implicitly adopted the jurisdictional provision of the UMDDL for use in enforcement of the IADA" in *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53 (Mo.App. E.D.1980). We disagree. In *Hammett,* we made absolute a writ of prohibition preventing the court from hearing three criminal cases which were pending against defendant because she had complied with the procedural requirements of the IADA, defendant had not acted to toll the running of the 180–day period, and the state failed to show good cause to extend the limitation period. *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 54, 56–60 (Mo.App. E.D.1980). The court did not address the UMDDL's jurisdictional bar, much less "implicitly" adopt it as Movant suggests here.

Perhaps more importantly, however, this court did not have before it these facts or the present issue to be determined.[2]

Accordingly, we hold that the 180–day limitation of the IADA is not jurisdictional and is therefore waivable by a prisoner's subsequent guilty plea.

Judgment is affirmed.

SIMON and HOFF, JJ., concur.

2. The Court stated:

We are careful to note that what may constitute a waiver by the prisoner of the time period, or what the State may show to be good cause to extend the time limit of the statutory period will vary according to the facts of each case. We have only attempted to set down some of the principles which should be considered in any disposition of a case falling under the Interstate Agreement on Detainers, noting that the weight to be given these factors will vary under differing circumstances.