**STATE of Missouri, Respondent,**

v.

**Steven Ray MURPHY, Appellant.**

**No. WD 63784.**

Missouri Court of Appeals,
Western District.

March 15, 2005.

Ellen H. Flottman, State Public Defender Office, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Office of Attorney General, Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Steven Murphy was convicted of two counts of second degree burglary and two counts of stealing, following trial to the court. Murphy contends on appeal that the trial court erred in denying his motion to dismiss the charges against him because he was not brought to trial within the statutory deadline for resolution of the detainers lodged against him by Holt County. We reverse the judgment and sentence and remand for further proceedings.

## Facts

Murphy was a prisoner in the custody of Kansas authorities in Ellsworth Correctional Facility. Murphy notified the Holt County Circuit Court and the Holt County Prosecutor of his desire to resolve his charges pursuant to the Interstate Agreement on Detainers, Section 217.490, RSMo 2000, on March 3, 2003. There were multiple Missouri counties with detainers lodged against Murphy, in addition to Holt County. Those counties included: Greene, Laclede, Andrew, Carroll, Webster, Pettis, Dallas, Ray, Barry, Clinton, and Cass County, some of which had as many as nine detainers lodged against Murphy.

While Holt County had communicated with the Kansas authorities seeking temporary custody of Murphy, he was first sent by Kansas authorities to Greene County on April 3, 2003, to resolve the detainers there. He was then "loaned" from that county to a number of other Missouri counties (how many is not apparent upon the face of the record) to address the charges in those jurisdictions. For much of this time, Holt County was unable to locate Murphy. On at least one instance, Holt County officials received notice from a Missouri county where Murphy was being held, but he was transferred to another county before Holt county officials could place a hold on him. Greene County returned Murphy to Kansas authorities on September 24, 2003, and Holt County was unable to learn his whereabouts until October 2003. Holt County finally took custody of Murphy from Kansas on October 3, 2003.

On December 3, 2003, Murphy filed a motion seeking to dismiss the Holt County charges due to failure to resolve the charges against him within 180 days after county officials received his request for disposition of those charges. The trial court denied that request, finding that, based upon the number of other detainers filed against him in numerous counties, there was no practical way that the Holt County detainers could have been resolved within the statutory deadline. Based upon those circumstances, the trial court concluded that the State had established good cause why it could not bring Murphy to trial on the charges prior to expiration of that deadline.

Murphy was subsequently tried and convicted of two counts of burglary in the second degree and two counts of stealing. He was sentenced to concurrent terms of seven years' imprisonment on all counts with the sentences consecutive to those from other counties. Murphy appeals.

## Discussion

■ At the outset, we observe that Murphy's argument before the trial court and in his opening brief on appeal is premised upon the Uniform Mandatory Disposition of Detainers Law (UMMDL), Section 217.450 *et seq.*, RSMo 2000. That act, however, addresses the mechanisms by which a defendant incarcerated in *Missouri* custody can request disposition of charges lodged against him in other Missouri counties. Here, Murphy was not incarcerated in Missouri, but rather was in the custody of correctional authorities in the State of Kansas. As the State correctly indicates in its brief on appeal, the applicable statutory provision, therefore, was not the UMMDL, but was instead the Interstate Agreement on Detainers Act (IADA), Section 217.490, RSMo 2000. The State claims no prejudice and requests no relief because of counsel's error. Rather it responds on the merits to Murphy's motion as though it was brought under the terms of the IADA. Murphy, in his reply brief, requests that we overlook that error and consider his arguments as if they were made under the IADA. Although we would be justified in rejecting Murphy's appeal for this error we decline to do so.

Murphy correctly points out that the IADA and UMDDL are closely related to each other. Numerous cases have stated that the two provisions are to be construed in harmony with each other. *See, e.g., Dillard v. State,* 931 S.W.2d 157, 165 (Mo. App.1996); *State ex rel. Clark v. Long,* 870 S.W.2d 932, 937 (Mo.App.1994). In some situations, cases construing one provision have been relied upon by cases interpreting the other provision. *See, e.g., Meyer v. State,* 854 S.W.2d 69, 71 (Mo.App.1993) (citing IADA cases concerning notice to

prosecutor with regard to an appellant's claim under the UMDDL). That said, the cases also recognize that the IADA and the UMDDL do not completely mirror each other. In fact, where the statutes differ, courts have resisted attempts to apply those differences from one act to the other. *See Dillard,* 931 S.W.2d at 165; *Clark,* 870 S.W.2d at 937. For example, the UMDDL expressly states that a violation of the UMDDL divests the trial court of jurisdiction, whereas the IADA does not contain a similar provision. *Bruce v. State,* 998 S.W.2d 91, 94 n. 3 (citing *Ellsworth v. State,* 964 S.W.2d 455, 456 (Mo. App.1998)).

We will, therefore, consider Murphy's arguments, premised upon the UMDDL, as if they were made under IADA to the extent that the two provisions mirror each other. We do not, however, reach any grounds for relief that are specific to the IADA, as they have not been preserved for purposes of this appeal. With that determination, we proceed to the merits of Murphy's appeal.

Pursuant to IADA, a prisoner incarcerated in one state (termed the "sending state") may seek the disposition of a detainer lodged against him in another state (the "receiving state"). The prisoner initiates that process by sending written notice to the prosecuting official and the corresponding court of the jurisdiction in a second state (the "receiving state"), requesting final disposition of the indictment, information, or complaint upon which the detainer is based. Section 217.490, Article III, Subsection 1. The receiving state is then under an obligation to seek transfer of the defendant from the sending state, and then to resolve the criminal charges that are the basis of the retainer within 180 days after receipt of the notice.

While the Interstate Agreement on Detainers sets a deadline by which the State must bring a criminal defendant to trial following the defendant's request to resolve the detainer placed on him, that deadline may be tolled under certain circumstances. For example, Article IV, Section 1 of the IADA provides that the running of the statute will be tolled for periods the court having jurisdiction determines that the defendant is unable to stand trial. *State ex rel. Taylor v. McFarland,* 675 S.W.2d 868, 871 (Mo.App.1984). The statue can also be tolled when the trial court, for good cause and with the defendant present in person or by counsel in open court, grants a reasonable or necessary continuance. *Id.* Courts have also held that IADA deadlines may be tolled when the delay in bringing the charge to trial is due to the defendant's conduct, under the theory that the defendant cannot "manufacture a violation" of the statute and then obtain relief based on that violation. *People v. Garner,* 224 Cal. App.3d 1363, 274 Cal.Rptr. 298, 304 (1990).[1]

In the proceedings below, Murphy had the initial burden to show that he had complied with the requirements of the IADA. *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 59 (Mo.App.1980). There appears to be no question that Murphy met his initial burden, here. Once that

---

1. We note, in passing, that the UMDDL permits some of these grounds for tolling, but does not contain others. Under the UMDDL the 180–day deadline may be extended: (1) for good cause shown in open court, (2) if the parties stipulate to a continuance, or (3) notice of a proposed continuance is provided to the defendant's attorney and he is provided an opportunity to be heard. Section 217.460, RSMo. Unlike IADA, the UMDDL does not contain an express provision permitting tolling of the statute when the defendant is unable to stand trial.

showing was made, the burden shifted to the State to produce evidence showing that the 180–day period was extended, either for good cause found in open court with the defendant present or as the result of the defendant's unavailability for trial. *Id.* Here, the State only argues the latter exception, contending that the 180–day deadline was tolled due to Murphy's inability to stand trial in Holt County while he was being held in other Missouri counties resolving charges in those other counties.

Murphy's sole argument on appeal is that the trial court was required to dismiss the charges against him because there was no grant of a continuance in open court, with either him or his counsel present, prior to the expiration of the 180–day deadline. The State does not contend that the statutory deadline was tolled under the continuance provision of the IADA. Instead, the State takes the position that the running of the deadline was tolled from his initial delivery to Greene County until he was brought to Holt County. The State premises its argument upon Article VI of IADA which provides for tolling "whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." Section 217.490, Article IV, Subsection 1.

■ The State relies primarily upon *State v. Mason*, 679 S.W.2d 268 (Mo. banc 1984), which discusses a defendant's unavailability, for purposes of tolling the 180–day deadline in the receiving state, while he is facing charges in another state. As a general proposition, that a defendant is being held in another jurisdiction (whether that jurisdiction is another state or the federal government) on pending criminal charges is typically sufficient to render the defendant unable to stand trial in the receiving state, thereby tolling the IADA. *See State ex rel. Taylor v. McFarland*, 675 S.W.2d 868, 872–73 (Mo.App.1984). "[A]

prisoner is entitled to simultaneously request speedy dispositions in more than one jurisdiction and ... the time limitations are tolled while the prisoner is facing trial in another jurisdiction because the prisoner is unavailable for transfer to another jurisdiction while on trial." *Garner*, 274 Cal.Rptr. at 304.

Here, we are not faced with unavailability caused by Murphy being held by another state. Instead, the argument is that he was unavailable because he was being held on charges pending in other Missouri counties. Missouri courts have not extended the principles behind *State ex rel. Taylor* and *State v. Mason*, however, to permit one county to toll the running of the statutory deadline while the defendant is facing charges in another county. While no Missouri case has directly broached the question of whether a defendant being held by one county is "unable to stand trial" for tolling purposes under the IADA, a related question was raised in *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 59 (Mo.App.1980). The specific question in *Hammett* was whether a defendant being held in another county constituted "good cause" for granting a continuance under Article III of IADA.

In *Hammett*, the defendant was brought to Missouri and was initially facing charges in Franklin County. *Id.* at 55. While those charges were pending, the defendant was transferred to St. Louis County to address charges arising there. *Id.* While it appears that the defendant was retransferred to Franklin County prior to the passage of the 180–day deadline under IADA, the charges against the defendant were not resolved within the remaining time under the Act. *See id.* The trial court denied the defendant's motion to dismiss the Franklin County charges, at which point the defendant sought a writ of

prohibition from the Eastern District, which was ultimately granted. *Id.* at 60.

Under Article III of IADA, a court may extend the deadline for disposing of the charges against a defendant by granting a continuance upon a showing of good cause in open court with the defendant present, either in person or by counsel. The State, in *Hammett,* argued on appeal that the defendant's being held in custody in another county facing charges constituted "good cause" sufficient to support a continuance. *Id.* at 59. The Eastern District rejected this contention. While noting case law that supported a finding of good cause when the defendant was being held by another jurisdiction, the court declined to extend the rationales of those cases to situations where the defendant was being held in a different county in the same state. *Id.*

While the *State ex rel. Hammett v. McKenzie* opinion did not decide the issue of tolling under Article VI of the IADA, the court's reasoning suggests that the mere fact that a defendant is held in another county in the same state does not render the defendant "unable to stand trial" for purposes of tolling the statute. Specifically, the opinion notes that a defendant held in another county in the same state is still subject to legal process within that state.

This type of situation is not unknown in other jurisdictions.[2] In *People v. Torres,* 60 N.Y.2d 119, 468 N.Y.S.2d 606, 456 N.E.2d 497 (1983), the question was whether the deadline under IADA would be tolled regarding pending charges Queens County for an 84–day period during which the defendant was standing trial in Suffolk County. The State argued that the statute should have been tolled, as the defendant was unavailable to stand trial in Queens County during that period. *Id.* 468 N.Y.S.2d at 609, 456 N.E.2d at 500. The New York Court of Appeals disagreed, however, concluding that the statute was not tolled.[3] That court relied on evidence in the record that intrastate rivalry and factionalism played a role in delaying the defendant's return to Queens County, in that Suffolk County refused to comply with Queens County's request to have the defendant shipped back to the latter county to stand trial prior to the end of the 180–day deadline. *Id.* 468 N.Y.S.2d at 610, 456 N.E.2d at 501. Another important factor appeared to concern the failure of Queens County authorities to seek enforcement of a court order directing transfer of the defendant to that county.[4] Thus, the opinion appears to rest, at least in part, upon a determination that a showing that a defendant is unable to stand trial, based upon the defendant being held in custody in another county of the same state, cannot be made absent proof that diligent and thorough steps were taken by the appropriate official to secure the presence of the defendant.

2. "The terms of the agreement cause decisions of other states which are a party to the agreement to be particularly valuable in its construction." *State v. Smith,* 686 S.W.2d 543, 547 (Mo.App.1985).

3. The court did, however, conclude that the statute would be tolled for that portion of the 84–day period that constituted the period necessary for consideration and determination of the defendant's omnibus motion. *See Torres,* 468 N.Y.S.2d 606, 456 N.E.2d at 501. It

reversed and remanded for a determination of that period, and if that was not sufficient to bring the case within compliance of the IADA, then the charges against the defendant were to be dismissed. *See id.*

4. The *Torres* opinion also suggests that such steps would also be necessary to establish "good cause" for a continuance that would extend the IADA deadline. *Id.* 468 N.Y.S.2d at 610, 456 N.E.2d at 501.

■ Here, there has only been a showing that Murphy was being held in an unknown number of Missouri Counties during essentially all of the 180–day period from the date Murphy's request for disposition was received by Holt County officials. The record is fairly opaque regarding the question of how much of Murphy's initial period in Missouri was actually spent resolving charges in other counties.[5] We do not know exactly what happened during Murphy's initial transfer to Missouri. We do not know how many counties he was lent to for prosecution, nor how diligently each charge was pursued and disposed (whether by trial, plea, or dismissal). Most importantly, we do not know if there was any period of time that he would have been available for transfer to Holt County. There is also very little evidence regarding attempts by Holt County officials to secure Murphy's transfer to that county to resolve the pending charges. The only evidence of any attempt to secure Murphy's transfer to Holt County was one attempt to place a hold on him in Barry County that apparently arrived too late to be honored.

On the record before us, we find *Hammett* and *Torres* to be persuasive. However, we recognize that the unavailability issue was not adequately developed in the proceedings below, because Murphy raised his motion to dismiss under the UMDDL, which does not include an express provision similar to Article VI of IADA. Thus, the State could not have been expected to have developed a record on this issue. Therefore, we reverse the judgment and remand the matter to the trial court for a determination of whether dismissal of the charges against Murphy are required under IADA. If Murphy contends that there are other grounds for dismissal under IADA, those grounds should also be addressed by the trial court. Depending on its findings, the trial court shall either dismiss the charges against Murphy or accord him a second allocution, resentence him, and enter a new judgment. *See State v. Carroll,* 543 S.W.2d 48, 51 (Mo.App. 1976).

HAROLD L. LOWENSTEIN, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.

**5.** While the Holt County Sheriff testified regarding some of the information available to his office concerning Murphy's activities and whereabouts during his initial transfer to Missouri, that information was largely incomplete because the Sheriff's secretary handled those contacts and she had been out sick for three weeks prior to trial.