781 So.2d 165 (2000)
Ex parte Michael Herman BOZEMAN.
(In re Michael Herman Bozeman a/k/a Sonny Bozeman v. State of Alabama).
1971759.
Supreme Court of Alabama.
April 21, 2000.
Rehearing Denied June 30, 2000.
Mark John Christensen, Andalusia, for petitioner.
Bill Pryor, atty. gen., and Norbert H. Williams, asst. atty. gen., for respondent.
*166 PER CURIAM.
Michael Herman Bozeman was convicted in the Covington Circuit Court for two counts of discharging a firearm into an occupied dwelling, two counts of discharging a firearm into an unoccupied vehicle, and one count of discharging a firearm into an unoccupied dwelling. Bozeman argued that the State tried him on these charges in violation of art. IV(e)the "anti-shuttling" provisionof the Interstate Agreement on Detainers ("IAD"). The trial court rejected Bozeman's argument, and denied his motion to dismiss. The Court of Criminal Appeals, on May 8, 1998, affirmed Bozeman's convictions, by an unpublished memorandum, holding that the State's technical violation of the IAD did not require the dismissal of the charges against Bozeman. Bozeman v. State (No. CR-96-1611), 738 So.2d 934 (Ala.Crim. App.1998) (table). On certiorari review, we reverse and remand.
Michael Herman Bozeman was arrested on June 15, 1995, on federal charges of intimidating a witness to a shooting incident that had occurred in Opp, Alabama. No other action was ever taken on these charges, but an incident report was filed with the Opp Police Department. On June 16, Bozeman was taken into federal custody on federal drug charges unrelated to the shooting incident. On November 3, Bozeman pleaded guilty to the federal drug charges and was sentenced by the United States District Court for the Middle District of Alabama. Meanwhile, in September 1995, the Grand Jury of Covington County had indicted Bozeman for possession of a controlled substance. On November 8, Bozeman was transferred from federal custody to Covington County to allow the State to pursue the possession charges (case CC-95-350). He was appointed counsel, was arraigned, and was then returned to federal custody. The possession charges (case CC-95-350) were nol-prossed in June 1996. In September 1996, Bozeman was indicted on state charges (case CC-97-16) stemming from the June 1995 shooting incident.
Following the indictment on the state shooting charges, Covington County placed a detainer on Bozeman, and he was again transferred from federal custody to Covington County on January 23, 1997. Counsel was appointed for Bozeman, and he was arraigned on the state shooting charges.[1] On January 24, Bozeman was transferred back to federal custody; that transfer prompted his counsel to file a motion to dismiss, claiming that the transfer violated the IAD.[2] In February, the shooting case (case CC-97-16) went to trial in the Covington Circuit Court, and a jury returned a guilty verdict on each of the five counts relating to the shooting. The trial court held a posttrial hearing to consider Bozeman's motion to dismiss the *167 indictment pursuant to the IAD. On May 16, the trial court denied Bozeman's motion to dismiss, and on May 21 it denied his subsequent motion for a new trial. Bozeman appealed, and the Court of Criminal Appeals affirmed. This Court granted Bozeman's petition for the writ of certiorari to consider whether a technical violation of the IAD warranted the dismissal of the state shooting charges against Bozeman (case CC-97-16).[3]
Bozeman argues that under the plain meaning of the IAD, his transfers in November 1995 and January 1997 both required the dismissal of the shooting charges with prejudice. Article IV of the IAD, which was codified at § 15-9-81, provides:
"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated....
". . . .
"(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."[4]
Bozeman argues that because he was transferred from federal custody to state custody to allow the State to pursue the possession case (case CC-95-350) and back to federal custody in November 1995, without being prosecuted in the shooting case (case CC-97-16), the charges in that case should be dismissed with prejudice on the basis that a prosecution on those charges would violate the IAD. However, at the time of Bozeman's November 1995 transfer, nothing more than an incident report had been filed with respect to the shooting charges. Thus, because no indictment, information,[5] or complaint had been filed with respect to the shooting case at the time of the November 1995 transfer, under the IAD the November 1995 transfer does not require the dismissal of the shooting charges.
Bozeman also argues that because he was transferred back to federal custody after his January 1997 transfer to state custody for arraignment in the shooting case (case CC-97-16) without being prosecuted in that case, the charges stated in the shooting case should have been dismissed with prejudice as violating the IAD. The Court of Criminal Appeals affirmed the trial court's refusal to dismiss, stating in its unpublished memorandum that, despite a technical violation of the *168 IAD, the statute should not be interpreted so narrowly as to defeat its purpose.
The State does not dispute that a technical violation of the IAD occurred and does not argue that Bozeman's recitation of this Court's rules of statutory construction is incorrect. Instead, the State asserts that the IAD is federal law that is subject to federal construction. The State cites an opinion of the Supreme Court of the United States stating that "[t]he [IAD] is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Moreover, the Supreme Court has held that "because the [IAD] is an interstate compact approved by Congress ... [it] is... a federal law subject to federal rather than state construction." Cuyler v. Adams, 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). See, also, New York v. Hill, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). If the United States Supreme Court had already ruled on this issue, or if all federal circuits were in agreement on this issue, we would accept the State's view. However, because the United States Supreme Court has not ruled on how the detainer statute should be interpreted, and in light of the split of authority among the courts of appeals for the various federal circuits, this Court is free to select the interpretation it considers most sound. See Hagler v. Ford Motor Credit Co., 381 So.2d 80, 82 (Ala.Civ. App.1980) (where federal courts are split on an issue and the United States Supreme Court is silent on that issue, state courts may select the view they consider the more logical one).
The conflict between the circuits was recognized by Justice White in his dissent from the order denying certiorari review in Taylor v. United States, 504 U.S. 991, 112 S.Ct. 2982, 119 L.Ed.2d 599 (1992). In a plea to the Court to settle this dispute among the circuits, Justice White stated:
"The Courts of Appeals are divided as to the propriety of dismissal when technical violations of the IAD occur. Some courts take the First Circuit's view that such violations do not merit dismissal, see, e.g., United States v. Roy, 830 F.2d 628, 636 (C.A.7 1987), cert. denied, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); United States v. Roy, 771 F.2d 54, 60 (C.A.2 1985), cert. denied, 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986); Sassoon v. Stynchombe, 654 F.2d 371, 374-375 (C.A.5 Unit B. Aug.1981); but others do not, see, e.g., United States v. Thompson, 562 F.2d 232, 234 (C.A.3 1977) (en banc), cert. denied, 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978); United States v. Schrum, 638 F.2d 214 (C.A.10 1981), aff'g 504 F.Supp. 23 ([D.]Kan.1980)."
504 U.S. at 991, 112 S.Ct. 2982.
We find persuasive the rationale set forth by the United States District Court for the Eastern District of Pennsylvania in United States v. Sorrell, 413 F.Supp. 138 (E.D.Pa.1976), aff'd, 562 F.2d 227 (3d Cir. 1977), cert. denied, 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). The district court, interpreting the same provision of the IAD, stated:
"Admittedly, there may be minimal interruption of the rehabilitative process by a one day trip from Graterford and return. However, Congress was not dealing with an individual situation, but rather with an agreement of national scope. Suppose the defendant had been imprisoned in Erie, and not Graterford. The interruption there would be far more serious than here. If the defendant were confined on a state charge in Amarillo, Texas and had to be transferred *169 for an indictment pending in Brownsville, Texas, a distance of approximately 700 miles, the disruption there would be far from minimal and could seriously interfere with one of the purposes of the Agreement. Again, Congress could have written limitations into the Agreement. Again, it did not. And again, it is not for us to legislate."

413 F.Supp. at 141. (Emphasis added.) Likewise, the Alabama Legislature could have stepped beyond the confines of the text of the compact and included limitations in the statute expressly allowing "technical" violations to occur. However, it, like Congress, did not do so. This Court will not interject its interpretation of what the Legislature should have done.
The IAD is not ambiguous. It would require a tortured reading of the statute for us to conclude, as the State suggests, that a brief violation of the IAD can be ignored. Our conclusion in this regard is consistent with the purpose of the Act to protect a prisoner's constitutional right to a fair and speedy trial. We recognize that some federal courts have ignored the plain meaning of the IAD,[6] but, for the reasons cited above, we are under no obligation to follow the interpretation applied by those courts.
Bozeman argues correctly that the Court of Criminal Appeals' decision violated a fundamental rule of statutory construction as stated by this Court in IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992):
"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
Id. at 346 (citing Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687 (Ala.1991)).
Bozeman was indicted on the state shooting charges on September 20, 1996; therefore an "untried indictment" was pending against Bozeman when he was returned to state authorities on January 23, 1997. He was returned to federal authorities without being tried by the State for the offenses of which he was subsequently convicted. Therefore, in accordance with the plain language of § 15-9-81 (art. IV(e) of the IAD),[7] the shooting charges against Bozeman should have been dismissed with prejudice. The trial court erred by denying Bozeman's motion to dismiss, and the Court of Criminal Appeals erred by affirming his convictions. The judgment of the Court of Criminal Appeals is reversed and the case is remanded.
REVERSED AND REMANDED.
HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
*170 BROWN, J., recuses herself.[*]
SEE, Justice (dissenting).
I dissent from the reversal of the judgment of the Court of Criminal Appeals that affirmed Bozeman's convictions. I do not believe the State's technical violation of the IAD required the dismissal of the charges against Bozeman.
The Supreme Court of the United States has stated that "[t]he [IAD] is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); see Cuyler v. Adams, 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) ("[B]ecause the [IAD] is an interstate compact approved by Congress... [it] is ... a federal law subject to federal rather than state construction."); Reed v. Farley, 512 U.S. 339, 347, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (recognizing that "`congressional consent transforms an interstate compact ... into a law of the United States'" (quoting Cuyler v. Adams, 449 U.S. at 438, 101 S.Ct. 703)). Thus, this Court is bound to follow federal precedent interpreting the IAD.
In Sassoon v. Stynchombe, 654 F.2d 371 (5th Cir.1981),[8] the former Fifth Circuit considered whether a technical violation of Article IV(e) of the IAD required habeas corpus relief from the federal prisoner's conviction of state charges in Georgia. The federal prisoner was transferred to a state jail for five days, was arraigned on state charges, and was returned to the federal prison, without Georgia's having resolved the pending charges against him. He was later transferred back to state facilities, was tried, and was convicted of the state charges. The former Fifth Circuit recognized that Article IV(e) of the IAD had in fact been violated when the prisoner was transferred back to the federal prison without a resolution of the pending state charges, but it stated that the prisoner's "release [was] not justified where no `legitimate interest' of the prisoner [was] defeated by the violation." Id. at 374. The court noted that "`a primary purpose of the [IAD] is to protect prisoners against whom detainers are outstanding[,]'... [and that] [n]o protection is necessary where no injury is threatened." Sassoon, 654 F.2d at 374 (quoting Cuyler, 449 U.S. at 449, 101 S.Ct. 703). The court denied the writ of habeas corpus, stating:
"`This court declines to apply [Article IV(e) of the IAD] mechanically contrary to the stated purposes of the [IAD] because such an application would be based upon a construction of the [IAD] against, rather than in behalf of, the legitimate interest of Sassoon in receiving rehabilitative education while in federal custody. On the facts of the present case, Clayton County's keeping Sassoon for trial, rather than returning him immediately after arraignment, would have interfered with Sassoon's legitimate interest in participating in the program of rehabilitation in which he was enrolled. A brief removal of a prisoner to the receiving jurisdiction *171 and his prompt return to the sending jurisdiction after arraignment and prior to trial [are] consonant with the intention of the [IAD].'"
Id. at 375 (quoting State v. Sassoon, 240 Ga. 745, 749, 242 S.E.2d 121, 123 (1978)).
Bozeman was transferred in January 1997 from a federal penitentiary to state custody for one day. He was arraigned on the state shooting charges (case CC-97-16) and was returned to the federal penitentiary until his trial. Although Bozeman asserts that no evidence in the record indicates that his transfer back to the federal penitentiary enabled him to participate in any rehabilitation program, the record shows that he acknowledged the existence of such rehabilitation before the trial court denied his motion to dismiss. Renewal of Defendant's Motion to Dismiss at 2. Bozeman does not argue on appeal that he was prejudiced by the transfer back to federal custody before his trial.[9] Accordingly, because Bozeman was not prejudiced by the State's technical violation of the IAD and because the violation permitted Bozeman to participate in federal rehabilitation programs, "no `legitimate interest' of [Bozeman] [was] defeated by the violation [of Article IV(e) of the IAD]." Sassoon, 654 F.2d at 374. Therefore, based on the reasoning of the former Fifth Circuit in Sassoon, 654 F.2d 371, I conclude that the Court of Criminal Appeals properly affirmed the trial court's denial of Bozeman's motion to dismiss.[10]
Despite the State's technical violation of Article IV(e) of the IAD, federal interpretation of the IAD, which this Court is bound to follow, dictates that where the violation does not defeat a legitimate interest of the prisoner and where the violation permits the prisoner to participate in a rehabilitation program, the IAD does not require the dismissal of the charges against the prisoner. Accordingly, the trial court properly denied Bozeman's motion to dismiss.
HOOPER, C.J., concurs.
NOTES
[1] The trial court granted Bozeman's newly appointed counsel leave to raise any issues that would normally be addressed before an arraignment.
[2] The IAD, also known as the Uniform Mandatory Disposition of Detainers Act ("UMDDA"), is codified in Ala.Code 1975, § 15-9-81. The IAD is a contract among the states, the United States, and the District of Columbia.

"The [IAD] attempts to remedy the disadvantages and hardships imposed upon prisoners attendant to the use of detainers and to eliminate potential abuses of the detainer system.... The [IAD] provides the prisoner with a method of clearing detainers lodged against him. It further provides cooperative proceedings for temporary transfers of prisoners for purposes of trial on outstanding charges among the participating jurisdictions to aid such disposition."
Gillard v. State, 486 So.2d 1323, 1325 (Ala. Crim.App.1986) (citing United States v. Dixon, 592 F.2d 329 (6th Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979)).
[3] As we discuss later, a "technical violation" of the IAD is one that does not defeat a legitimate interest of the prisoner, for example, an interest in receiving rehabilitation services.
[4] Article V(e) requires that the prisoner be returned to the sending state "[a]t the earliest practicable time consonant with the purposes of [the IAD]."
[5] "An information is a written statement charging the defendant or defendants named therein with the commission of an indictable offense, made on oath, signed, and presented to the court by the district attorney, pursuant to Rule 2.2(e), without action by the grand jury." Rule 13.1(b), Ala. R.Crim. P.
[6] See, e.g., Sassoon v. Stynchombe, 654 F.2d 371 (5th Cir.1981).
[7] "If trial is not had on any indictment ... prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Ala.Code 1975, § 15-9-81 (Art. IV(e) of the IAD).
[*] Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.
[8] Sassoon was decided on August 28, 1981. See 654 F.2d 371. In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), the United States Court of Appeals for the Eleventh Circuit held that "the decisions of the United States Court of Appeals for the Fifth Circuit ... as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit." Thus, Sassoon is binding precedent in this case.
[9] After Bozeman's motion to dismiss was denied, he did assert in a motion to the trial court that "the State's violation of the [IAD] prevented [him] from having adequate opportunity to consult with his Court-appointed attorney prior to the trial of [his] case." Motion for Judgment Notwithstanding the Verdict or in the Alternative for New Trial at 1. However, the record contains no evidence to support this assertion.
[10] This conclusion is in accord with a majority of federal circuits that have addressed this issue. See United States v. Taylor, 173 F.3d 538, 541-42 (6th Cir.1999) ("Numerous circuit courts have held that such quick, temporary transfers do not violate the IAD. See Taylor v. United States, 504 U.S. 991, 112 S.Ct. 2982, 119 L.Ed.2d 599 (1992) (White, J., dissenting from denial of certiorari) (listing cases from [the] First, Second, Fifth (Unit B 1981), Seventh, and Ninth Circuits)."); United States v. Daniels, 3 F.3d 25, 27 (1st Cir. 1993) ("[W]e have heldas have several other circuitsthat a brief interruption in state prison confinement for purposes of arraignment, where the prisoner is returned to state custody the same day, does not violate the IAD.") (listing cases from the First, Second, Seventh, Eighth, and Ninth Circuits).